# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE:  BOSTON SCIENTIFIC CORP.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION

                                        MDL No. 2326

-------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

    *Audrey Straub v. Boston Scientific Corp.*           No. 2:13-cv-14904

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 22]. For the reasons set forth below, the Motion is **DENIED**.

## I.    Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific*

*Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Straub's case was selected as a Wave 2 case by the plaintiffs.

On January 21, 2011, Ms. Straub was surgically implanted with the Pinnacle Pelvic Floor Repair Kit (the "Pinnacle") and the Solyx SIS System (the "Solyx"), products manufactured by BSC to relieve POP and SUI. (BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 22], at 2). She received her surgery at a hospital in Mesa, Arizona. (*Id.*). Ms. Straub had a second surgery on February 8, 2011, to adjust her Solyx sling and correct problems with urinary retention. (Boyer Dep. [Docket 53-3], at 82:6–16). Dr. Sharon Boyer, her physician, testified that adjusting the sling is "not uncommon" and "not that big a deal." (*Id.* at 84:14–15, 22–23). Ms. Straub's cystocele subsequently reprolapsed. (*Id.* at 85:5–6). Ms. Straub underwent a third surgery on July 1, 2011, to treat her cystocele and correct her Pinnacle mesh. (Pl. Audrey Straub's Second Supplemental Answers to Def.'s Boston Scientific Corp.'s Pl. Fact Sheet ("PSSFS") [Docket 22-1], at 9; Boyer Dep. [Docket 53-3], at 85:1–2, 88:8–11).

Ms. Straub claims that as a result of implantation of the Pinnacle and Solyx, she has experienced injuries including urinary problems, mesh malfunction, pelvic organ prolapse, and corrective surgeries. (PSSFS [Docket 22-1], at 9). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Pl.'s Short Form Compl. [Docket 1] ¶ 13). In the instant motion, BSC argues that each of the plaintiff's claims is barred by Arizona's statute of limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss Ms. Straub's case.

## II.     Legal Standards

### A.     Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

B.        **Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). However, if a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as Ms. Straub did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Straub received the Pinnacle and Solyx implantation surgery in Arizona. Thus, the choice-of-law principles of Arizona guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Arizona law to the plaintiff's claims. Arizona follows the "most significant relationship" test, as outlined in the Restatement (Second) of Conflict of Laws ("Restatement"), in determining choice of law questions. *Bates v. Superior Court*, 749 P.2d 1367, 1369 (Ariz. 1988). For torts claims, the Restatement takes several factors into account, including (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* at 1370; Restatement § 145(2) (1971). This inquiry is qualitative, not quantitative, and a court should evaluate the contacts "according to their relative importance with respect to the particular issue." *Bates*, 749 P.2d at 1370 (quoting Restatement § 145(2)). In addition, in an action for a personal injury, the law of the state where the injury occurred should be applied unless some other state has a more significant relationship. *Id.* (citing Restatement § 146).

Here, the implantation surgery that allegedly resulted in Ms. Straub's injuries took place in Arizona. Ms. Straub is an Arizona resident, and she received medical care for her alleged injuries in Arizona. No other state has a more significant relationship. Thus, I apply Arizona's substantive law—including Arizona's statutes of limitations—to this case.

### III.    Discussion

Resolution of the statute of limitations issue is normally a question of fact. *Landgraff v. Wagner*, 546 P.2d 26, 34 (Ariz. Ct. App. 1976). Personal injury claims are subject to a two-year statute of limitations. Ariz. Rev. Stat. § 12-542 (West 2015), *held unconstitutional on other grounds by Anson v. Am. Motors Corp.*, 747 P.2d 581 (Ariz. Ct. App. 1987). Although breach of warranty claims are typically subject to a four-year statute of limitations, *Id.* § 47-2725(A), when

such a breach is related to an underlying personal injury claim, the statute of limitations governing personal injury claims applies instead. *Wetzel v. Commercial Chair Co.*, 500 P.2d 314, 317 (Ariz. Ct. App. 1972). Thus, a two-year statute of limitations governs all of Ms. Straub's claims. The limitations period runs when the cause of action accrues, *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995), subject to the "discovery rule." The discovery rule provides that "a cause of action . . . accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct." *Lawhon v. L.B.J. Institutional Supply, Inc.*, 765 P.2d 1003, 1005 (Ariz. Ct. App. 1988) (quoting *Mayer v. Good Samaritan Hosp.*, 482 P.2d 497, 501 (Ariz. Ct. App. 1971)); *see also Anson v. Am. Motors Corp.*, 747 P.2d 581, 584 (Ariz. Ct. App. 1987) ("[A] cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant's negligent conduct."). It is not enough that a plaintiff knows he or she has suffered some kind of injury; the plaintiff must have "knowledge sufficient to identify that a wrong occurred and caused injury." *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)). In other words, a cause of action does not accrue until the plaintiff discovers his or her injury is attributable to a particular person's conduct. *Doe*, 955 P.2d at 961.

Here, BSC argues that the statute of limitations began to run on February 8, 2011, pointing out that Ms. Straub first began attributing her injuries to the Pinnacle and Solyx after her "TVM implant/Mesh malfunction/Revision" on that date. (Mem. in Supp. [Docket 22], at 8; PSSFS [Docket 22-1], at 9). BSC also points out that Ms. Straub signed a patient informed consent form for each surgery, which, in its view, establishes that Ms. Straub knew of the

problems to be corrected in surgery—the same problems that Ms. Straub attributed to the BSC

products. (Mem. in Supp. [Docket 22], at 9). For example, BSC notes that

> Ms. Straub attributes the following alleged bodily injuries to the implantation of
> the pelvic mesh products: "Urinary problems after transvaginal implant[;] Mesh
> Malfunction/Corrective Surgery[;] Pelvic Organ Prolapse/Corrective Surgery
> (revision of mesh)." According to the verified plaintiff fact sheet, on February 8,
> 2011, Dr. Boyer treated Ms. Straub for these very symptoms: "Pelvic Organ
> Prolapse; urinary problems after transvaginal implant; mesh malfunction and
> revision." Thus, by <u>February 8, 2011</u>, Ms. Straub knew, or with reasonable
> diligence should have known, the alleged facts underlying her cause of action.

*Id.* (citations omitted).

Although BSC has shown that Ms. Straub knew of her injuries, BSC presents no evidence

that Ms. Straub ever linked her injuries to a possible wrong committed by BSC. To the contrary,

Dr. Sharon Boyer, Ms. Straub's physician, stated that releasing the Solyx sling, the goal of Ms.

Straub's second surgery, "is not uncommon" and "is not that big a deal." (Boyer Dep. [Docket

53-3], at 84:14–15, 84:22–23). Similarly, Dr. Boyer explained that leading up to the third

surgery, the Pinnacle mesh had slipped, and Ms. Straub's cystocele had reprolapsed. (*Id.* at 85:5–

6; 89:4–7). Ms. Straub testified that between her first and second surgeries, she "just waited and

[thought] that it was all going to work." (Straub Dep. [Docket 53-2], at 154:8–11). Given Dr.

Boyer's statements, Ms. Straub had no reason to suspect at that time that the BSC products

possibly could have been defective. *See Walk*, 44 P.3d at 996 (no duty to file suit based on

information plaintiff subjectively believes to be false). Ms. Straub also stated that she did not

become aware of the FDA announcement regarding surgical mesh, nor did she see television ads

regarding transvaginal mesh litigation, until after her surgeries. (Straub Dep. [Docket 53-2], at

150:19–151:15). Thus, a reasonable jury could find that Ms. Straub's cause of action did not

begin to accrue until some time after her third surgery on July 1, 2011, which would make her

lawsuit, filed on June 19, 2013, fall within the two-year statute of limitations.

BSC asserts that pursuant to *Mack v. A.H. Robins Co.*, 573 F. Supp. 149 (D. Ariz. 1983), a plaintiff in Arizona does not need "to know of the defendant's improper conduct or defect in the product" for the statute of limitations to run.[1] (BSC's Reply in Supp. of Its Mot. for Summ. J. ("Reply") [Docket 61], at 4 (quoting *Mack*, 573 F. Supp. at 154)). However, *Anson v. American Motors Corp.*, as stated earlier, provides that "a cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the *defendant's negligent conduct*." 747 P.2d 581, 584 (Ariz. Ct. App. 1987) (emphasis added). *Mack* was decided before *Anson* changed the standard and therefore is no longer good law. BSC also cites to *Cooper v. Ross Stores, Inc.*, No. 1 CA-CV 13-0223, 2014 WL 800940 (Ariz. Ct. App. Feb. 27, 2014), in support of its position. In *Cooper*, a case decided on a motion to dismiss, the plaintiff was not reasonably diligent in discovering who had injured her. *Id.* at *1. Here, however, a reasonable jury could find that Ms. Straub was reasonably diligent in discovering BSC's possibly wrongful conduct.

On this reasoning, and bearing in mind my duty to draw all legitimate inferences in favor of the nonmovant, I **DENY** BSC's Motion [Docket 22] with respect to Ms. Straub's claims.

## IV.    Conclusion

As explained above, the defendant's Motion [Docket 22] is **DENIED**. The court

---

[1] BSC also argues that Ms. Straub is attempting to create an issue of fact by amending her PSSFS after BSC's motion for summary judgment, thereby running afoul of the sham affidavit rule. *See* Reply [Docket 61], at 1. Because I am able to resolve BSC's motion without resorting to Ms. Straub's amended affidavit, I do not reach this issue.

**DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          March 16, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE